13-3048 Sam Ham v. Univ of Dayton et al. Oral argument to be as follows, 15 minutes per side. Mr. Ham for the Plaintiff. Good morning. You may proceed. Your Honors, may I please the Court, thank you for this audience today. My name is Sam Ham and I am the appellant in this case. This Court should reverse the District Court's motion for summary judgment ruling for four reasons. First, the District Court ignored facts that were entitled to a presumption of truth. Second, the complaint shows a well-pled prima facie case for discrimination, which should survive a motion to dismiss. Third, Han did file the EEOC charge within a 300-day window, as was required by law. And fourth, the pleading showed that the individual defendants are supervisors. To begin with, as odd as this may be, if the Court permits, I'd like to just refer to myself in the third person, just for the purposes of the record. And it might seem bizarre, but if that's okay, I'd like to just continue to refer to myself. You've got an Iqbal and Twombly problem in this case. Yes, Your Honor, we do. They're supposedly an Iqbal and Twombly problem, but the Iqbal and Twombly problem really is not a problem, because the complaint does plead a plausible claim for discrimination. And also, the facts that were pled in this complaint should not have been disregarded, but should have been given a presumption of truth. At the outset, the first reason that this Court should reverse the lower court is because the lower court disregarded a whole bunch of facts that were entitled to a presumption of truth, because it erroneously concluded that those facts were legal conclusions. And some of the facts that it disregarded are, for example, paragraph 95, defendants violated their own policy in evaluating Dr. Hahn. That is a factual allegation, and the Court disregarded that, concluding that it was a legal conclusion, and that can't be right. What was that paragraph again? Defendants violated their own policy in evaluating Dr. Hahn. And you think that's a fact? It is a fact. And the distinction between a legal conclusion and a factual assertion is very simply that a factual assertion is something that is specific to the case that is susceptible to evidentiary proof. Let me ask this. You said they violated their policy in evaluating you. Now, you were there. You didn't have tenure, and you were not on a tenure track. What was your status as a member of the faculty? Were you an adjunct faculty member, or what exactly was your capacity? I actually was on the tenure track, Your Honor. I was an assistant professor that was hired in specifically to teach patent law and intellectual property, and I was on the tenure track, and therefore was bound by the policy manual, as was everybody else. I thought the record said that they had said something that they could consider you, or re-evaluate you, or evaluate you for tenure, whether to be on a tenure track after three years. But you were not initially hired in that capacity. Is that not correct? That is not correct, Your Honor. I was originally hired on the tenure track, and the tenure track eventually should have matured into a decision on promotion, retention, and tenure as the sequence progressed. Well, you're not guaranteed tenure. You're evaluated. Normally, in academic institutions, you are on a tenure track, but at some point, an evaluation is made. Yes, Your Honor, and that is correct. In fact, the way that the contract is worded is that I'm neither guaranteed tenure, nor retention, nor promotion. But the one thing that the policy manual does guarantee is a fair and equal process. And in addition to that, in making that tenure decision, the University of Dayton and all of the members that were on the committee are prohibited from discriminating against the person that is being evaluated. So not only is it a contractual provision, but it's a requirement at law. What is the evidence that you were discriminated against on the basis of? Race and gender, Your Honor. Yes, there are several interactions that I've had with former tenured professors that have indicated that there is a good basis for gender and race discrimination. But when it's all said and done, at this stage of the proceedings, we're on a motion to dismiss, Your Honor. So the question of whether or not those facts exist are something that I should have been able to do in discovery without having this case dismissed outright on a 12b6 motion. But don't you have to, now under the Supreme Court law, Twombly and so on, don't you have to allege a plausible factual case? Yes, Your Honor. And we submit that in this particular case, that Hahn did allege a plausible case for discrimination. And the reason for that is because all of the elements under McDonnell Douglas were specifically alleged, and facts under each of those elements were specifically pled. And so having pled a prima facie case under McDonnell Douglas, it's difficult to imagine how the complaint does not survive plausibility under either Iqbal or Twombly. Did you plead that there were other individuals that you identified who were of a different race and gender who were similarly situated to you, who were better treated by your employer? Yes, Your Honor, we did. And as an initial matter, those allegations are in paragraphs 109, 110, 112, 117, 350, 357, and 363. Wait, wait, wait. Slow down, please. I'm sorry, Your Honor. And by way of example, I'd like to just read a couple of those paragraphs. Wait a minute. No, no. Yes. Give me the paragraph numbers again a little more slowly. 109. OK. Well, you don't identify anybody in paragraph 109 that you would be compared with. What's the next one? Actually, if I may, Your Honor, in paragraph 109, it says the scholarly writings of all of the other non-tenured faculty members. So not only do I identify them, I identify all of them. Well, that's too general to do much with unless you were to give some examples. I guess that general allegation could be sustained if given a few examples. But what's the next one? The next one is also 10, I'm sorry, 117. And that recites, Han is the only non-tenured faculty member at the University of Dayton School of Law that has been subjected to an evaluation process that violates defendants' own policies. But you'd have to say what policy you're talking about and some specific examples of what was done with the other non-tenured faculty members to be a basis for comparison would have been helpful as well. What's the next one? And that comparison does come in in paragraph 109, Your Honor, which recites that the scholarly of the University of Dayton School of Law. And then in paragraph 110, the complaint recites that despite the fact that Dr. Han writes in a very specialized field for which none of the committee members have any experience, Dr. Han's scholarly writing has never been sent to be juried by an outside scholar. And with reference to the specificity, Rule 8 does not require the kind of specificity that requires a complainant to recite every name and every detail. Well, not every name. But we do have Trombley and Iqbal that does probably require more specificity than has been mentioned thus far. What other paragraph? Well, maybe one or two other paragraph numbers just by way of example. The paragraph 350 is one of them. Did you say 350 or 315? 350, Your Honor. OK. And that paragraph is defendants' conduct in treating Dr. Han unfairly, treating Dr. Han less favorably than other similarly situated non-Asian employees, mischaracterizing information, making false statements, lying, and deciding not to renew Dr. Han's contract to counter Dr. Han's race violated 42 U.S.C. 1981. And again, the question here isn't whether or not the individuals were specifically named by name. The question is whether the University of Dayton and the defendants had sufficient notice under Rule 8 to understand what was being alleged against them. And while this doesn't appear in the records, there are... Well, when you say everybody was treated better than you, that doesn't provide them with notice as to what evidence to bring forward to dispute the allegation because the allegation is too general and conclusory. You have to say a bit more than that, I would imagine. Well, that's enough examples of that. Why don't you continue with your argument? OK. The first one is that they ignored the facts that were entitled to the truth. And if we look at the record, there are a whole bunch of facts that the district court decided to completely disregard when those factual averments were entitled to a presumption of truth. And if we look at those averments, just to give an example of the difference between a legal conclusion and a factual averment, a legal conclusion would be a general statement that is applicable to all cases. So, for example, the statement... Well, I don't know of any or many legal conclusions that are applicable to all cases. Counsel, we decide these cases one at a time. Yes, Your Honor. But by way of any... On the basis of the facts of that particular case and try to apply the law. And that's exactly right, Your Honor. And the point here is when the facts are well-pled, those facts should be assumed to be true rather than being disregarded. And one example of the difference between the legal conclusion and a factual averment would be a legal conclusion would be plaintiff is a member of a protected class, completely general, no specifics. A factual averment would be Han is a 42-year-old Asian-American male. That has the specifics and it's a fact. And here, if we look at the complaint and all of the paragraphs that were stricken by the district court, the district court struck numerous paragraphs that were strictly factual allegations, and that's an error. And based on that stricken complaint, all of the paragraphs... But it's insufficient now, at least under Plumlee and Iqbal, to simply state that I am a member of a protected class and I received a discharge or I was not rehired or continued on. You've got to, nowadays at least, according to the Supreme Court, cite specific facts that make the case a plausible case. It used to be you could just sort of generally allege mixed conclusions and a little bit of factual material, but without much factual material. And under notice pleading, you could get by with that. But the purpose of Iqbal and Plumlee was to close the door, rightly or wrongly, on that kind of notice pleading and require more factual, what I think of as equity pleading, factual pleading. I don't really see what the facts are here that you're alleging. The facts that we are alleging here, the factors of McDonnell and Douglas, are that as a 42-year-old Asian-American male, I'm in a protected class, that there was an adverse decision that was made against me by the university and that in all relevant respects I was treated worse off than all of the other non-tenured faculty members, of which there's only five of them, and none of them are Asian-American. But you allege nothing factually about that treatment, how it differs or why it differs or what. And under the law there's no requirement for that type of specificity. Why? Now I beg to differ. Now you've got to make a plausible case that this is true and cite some facts. And that's my understanding of the law now. If I may, Your Honor, the Supreme Court in handing down Iqbal and Twombly did not overrule the seminal case from the Supreme Court on employment discrimination, and that is Svirkovich v. Surrema. And if this complaint in our case – I see I'm out of time. May I finish the response? Sure. If the complaint in Hahn v. University of Dayton is more detailed than the Svirkovich v. Surrema complaint, then it axiomatically must survive under Iqbal and Twombly because Svirkovich and Surrema were never overruled but approvingly cited by Iqbal and Twombly. Thank you for your time, Your Honor. Thank you. May it please the Court, good morning. Good morning. My name is Paul Hallinan. I'm with Porter Wright Morris and Arthur. I'm resident in the Dayton office, and I am here for all of the defendants' appellees. Now, one of the defendants, this Dean McGrell, was not there at the time of the alleged events. So I imagine there would have been – there might be a problem with some question as to whether he should have named that defendant in the first place. Is it right that that person was not there at the time? That's correct, Judge. Dean McGrell came to the university in July 1, 2011, and all of the activity with respect to the non-renewal of Mr. Hahn's teaching contract was completed by, I believe, May 11, 2011. So Dean McGrell came in after the fact. Dean McGrell was named in the amended – second amended complaint, in all of the complaints here and over in state court, named in them because he participated as a university representative to try to mediate Mr. Hahn's claims. And no good deed goes unpunished. So would you say here that under the old notice pleading standards before Iqbal and Twomley, this would pass muster under just pure notice pleading, but the case turns on the meaning, the specificity requirements of Iqbal and Twomley? I would like to be able to give you a blanket answer that this case would have survived under Conley v. Gibson. I can't actually do that. There's no question that if it was just notice pleading under Conley v. Gibson, the discrimination claims in this case might have survived because he says the magic words racial identity, gender identity, bad treatment, and it was due to that. And that used to be enough under Conley v. Gibson. This case is a little bit different because as Judge Clay has already noticed, Dean McGrell wasn't even involved in this case, so he would have been kicked out whether or not anybody else would have been. There are also – there's a statute of limitations issue or a time bar with respect to the EEOC proceeding. So the Title VII claim would be gone because of the failure to file that on time. Title VII claim against the individuals would be gone under any circumstance because they weren't named in the EEOC charge whether or not it was timely filed. So there are a bunch of things like that that help prevent me from telling you directly that this case would have survived under Conley v. Gibson. Yes, but on the question of stating a claim. Under the sufficiency of the pleading, I suspect that large parts of it would have, yes. I was going to spend most of my time on Conley v. Iqbal, but it seems to me like you all have the handle I was going to give you for it. What I would like to do is point out to the Court that we filed a 28-J supplemental citation of authority in a case in which Judge Clay participated, the Flagstar Bank case, which was decided last August, a couple of weeks ago. And in that case, the specific issue that you have noted was directly addressed, and that is you can't simply say I was treated differently than somebody else. You can't simply say I was treated differently than somebody who was not of my protected class. You have to identify something about that person. The confusion that has come up on that in this case is the notion that somehow the District Court required Mr. Hahn to plead a prima facie case under McDonnell Douglas. A prima facie case under McDonnell Douglas is a red herring. It has nothing to do with this case. Judge Rose said twice you're not required to plead a prima facie case under McDonnell Douglas. But if you are going to rely on a prima facie case under McDonnell Douglas to support the notion that there's something more than what Flagstar Bank says you've got to have, something more than simply racial identity and bad outcome, if you're going to do that to say there's something more that ties the racial identity and the bad outcome to race or gender, and you're going to use some element of McDonnell Douglas to do it, then you've got to plausibly plead that element of McDonnell Douglas. You're not required to. It's not necessary. But simply saying that the McDonnell Douglas formula is not also sufficient, and that's what Twombly and Iqbal essentially stand for, and that's certainly what the result was in Flagstar Bank, and that's what the result was with Judge Rose below. He said he hasn't told me anything about who these people are, what the circumstances were in which they were badly treated or better treated than he was, and he went through a litany of the things that are generally and conclusively alleged as to the differences in treatment allegedly afforded to members of the non-protected classes, but he doesn't identify any specifics. And that's just not satisfactory. It's not sufficient under Twombly, Iqbal, or Flagstar Bank. What about this issue of whether the EEOC charge was filed on time to permit the plaintiff to go forward with these Title VII claims? It appeared that the claims were not timely, but then it also appeared that the plaintiff came up with a new date, but that that new date that would have made his filing timely was only filed in connection with the appeal and not before the district court, so maybe you could explain that issue. I'll do my best, Your Honor. I mean, the point is, or the law, the governing principle is that you have to file with the EEOC and the OCRC jointly within 300 days of the first notice of the last event of discrimination. In the first complaint in this case, and in the first amended complaint in this case, Mr. Hahn said, I filed a charge on March 23, and he had a document attached, the famous Exhibit W, and that document said that his last date of discrimination, not the first notice of the last date, but the last date of discrimination was May 11th of 2011. The charge was filed on March 23, 2012. That's 300 plus days, so that document by itself puts him out of court. He's not allowed to file a Title VII claim at that point. The EEOC quickly made that determination and said in that same exhibit, the second page, that he's out of time, and that's what we had. After we moved to dismiss the first amended complaint on the basis of this thing being out there, there was an opposition filed by Mr. Hahn in which he had this other document, this February 21 fax letter, which had a different start date for the last date of notice of the discriminatory act, and he had that attached to an affidavit, which was attached to his memo and op to our motion for a motion to dismiss the first amended complaint. That issue never came to the judge. Judge Rowe has never, as far as I know, probably never saw that motion, never saw those attachments. At the same time that Sam Hahn filed the motion to dismiss the first amended complaint, he also filed a motion for leave to file the second amended complaint, and when he did that, the judge said, well, I'm not going to look at the motion to dismiss the first amended claim. It's difficult for district judges to keep track of this stuff, but he realized he didn't have to touch that one, and as far as we can tell, he never saw it. So then he files the second amended complaint, and we move again to dismiss. His opposition, docket 27 in the court below, does not mention that exhibit, that February 21 document that's in the record. Judge Rowe searched in vain for a February 21 charge in the first amended complaint, the second amended complaint, and in the memoranda, and he says he looked for it, he couldn't find it, and in the memoranda in support of and in opposition to the motion to dismiss the second amended complaint. It wasn't attached to any of those things. Now we're being told that Judge Rowe should have picked this document that he was aware of, exhibit W, should not have picked that. He should have picked the February 21 and used that, but he wasn't even aware of it. It was never pointed out to him in docket 27, the opposition to our motion to dismiss the second amended complaint, and as far as we can tell, he never saw it because it was attached to a motion that was mooted and that he never ruled on. What does the record show, if anything, about the school's reason for not continuing him on the tenure track and so on? I think the record is fairly definitive that he was not continued because of poor scholarship, and I think even in the second amended complaint you can see what the reason for that conclusion was. Specifically, I believe it's if you look at exhibit X. It's the plaintiff's statement to the dean about why he shouldn't be fired, and he's got a laundry list on that document where he goes through the three articles he published, and the last of those three articles was published 15 months before he was non-renewed. It was also submitted for publication, accepted for publication. The last of those articles was submitted for publication before the first evaluation he had with the PRT committee. They criticized the articles that they were given to review, and they said, come back again in a year and we'll see if you've improved your scholarship. That document shows that he had no additional scholarship from the time of that first evaluation until the time of that second. There were chances for not continuing with scholarship, but he was thought to be a good teacher. Well, there was a difference of opinion about that, but he was not dismissed for poor teaching. The PRT committee, the six individual defendants, unanimously concluded that his teaching was not adequate. That decision was reversed by the dean. She said, no, his teaching is marginally acceptable. He can stay on for that, but his scholarship, I've got to agree with you, just isn't there. There wasn't a record of scholarship, and the scholarship he had had criticism that had not been remedied or repaired during the time he had left. Was this published in Paris? Your Honor, I represent a university. I can't say that. Look, there is an expectation, and Dr. Hahn was informed of it, there's an expectation that if you want to move up in scholarly work as a professor at a law school, you've got to publish. I mean, that's just that simple. And if you don't publish, as he didn't for the 15 months before he was non-renewed, no one's going to publish for you. So, yeah, in a sense, it's publish or perish. And that goes on for a while. Once you're tenured, that I can tell you it's not unique to Dayton, if you have any apprehension. No, no, I don't. The only other thing I wanted to mention before I sit down, unless there are other questions about Twombly and Iqbal and its application here, the only other thing I wanted to mention was this business about Dean McGreal. And you're right, he shouldn't have been here in the first place. But what troubles me is that when this appeal was taken, the basis for the appeal regarding Dean McGreal was that they had alleged, allegedly had alleged in the second amended complaint, discrimination by Dean McGreal. And we in opposition said, no, there is nothing in the second amended complaint that uses the words discrimination with respect to Dean McGreal. There is no indication that there was any. And if there was, it would have been a violation of Mr. Hahn's sworn statement to the EEOC that the last act of discrimination occurred on or before May 11th, because Dean McGreal wasn't there. So when we get the reply brief, after we have our last shot, we got the reply brief. You mean on appeal? I'm sorry? You mean on appeal? On appeal, right here in this court. We got the reply brief. And the reply brief said, well, yeah, I guess that isn't going to work. Dean McGreal didn't engage in direct acts of discrimination. He ratified after May 11th the pre-May 11th discriminatory acts allegedly committed by the others. Under Ohio law and under federal law, ratification by an individual does not constitute liability for discrimination because an individual can only be liable for actual discriminatory acts committed by him and not for ratification of somebody else's. I think that's about it. Thank you. All right. Thank you. Any rebuttal? May it please the Court? Only a few points on rebuttal. The first one is with reference to the EEOC letter. The sequence of events was on February 21st, 2011. The EEOC was notified by letter of charge, at which point on March 1st the EEOC sent back a letter saying, send this back to us on Form 5. Form 5 was what was submitted on March 23rd. The question of whether or not the judge had in front of him exhibits in the records 12-2 and 12-3, which are those two letters, is irrelevant. And the reason for that is because those two dates, March 1st and February 22nd, were expressly pled in paragraphs 53 and 54. And as factual allegations, they were required to be presumed to be true. The truth of those two statements is also bolstered by the fact that those letters were made off record in the lower court. The second one refers to the specificity of the complaint and how specific it is. As an initial matter, we reiterate that Rule 8 does not require the specificity, but here in the amended complaint we have the what, the where, the when, the how, and the who. The only deficiency in the who being that the individuals were not named by name, but they were all specifically identified. And that's in paragraph 109, 110, where all of the other non-tenured professors were listed as being treated differently. If all doesn't identify every other individual, then I'm not sure what will. And that distinguishes this particular case from Flagstar as well. In Flagstar, the allegation was that there were hundreds, yay, thousands of people that were denied credit, and nobody knew how to determine who those hundreds or thousands of people were. Here, with the University of Dayton, there were five individuals, and of those we pled that all five of them were treated differently. There's no other way to make it clearer than all of them were treated differently, and Han was the only one that was singled out. And they don't dispute the fact that I was the only Asian-American faculty member. Thank you, Your Honor. Thank you. And the case is submitted.